**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | |
|---|---|
| **COURTNEY ANDERSEN and LISA BURMEISTER, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | **Case No.** |
| **v.** | |
| **MID-AMERICA PET FOOD, L.L.C.** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## <u>PLAINTIFF'S CLASS ACTION COMPLAINT</u>

Plaintiffs Courtney Andersen and Lisa Burmeister ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class," as defined below), bring this Class Action Complaint against Mid-America Pet Food, L.L.C. ("Mid-America" or "Defendant"). Plaintiffs base these allegations on personal knowledge as to matters related to and known to them. As to all other matters, Plaintiffs base their allegations on information and belief and through investigation of their counsel. Plaintiffs believe substantial evidentiary support exists for the allegations below.

## <u>NATURE OF THE ACTION</u>

1.      Mid-America is a manufacturer of pet foods.

2.      Plaintiffs bring this case on behalf of themselves and all other consumers nationwide who bought Defendant's pet food products contaminated with Salmonella. Salmonella can cause pets to become sick and can result in serious illness to humans who handle the contaminated pet food.

1

3. Defendant manufactures, warrants, advertises, markets, distributes and sells various pet foods under several brand names, including Victor Super Premium, Wayne Feeds, Eagle Mountain, and Member's Mark.

4. On September 3, 2023, Defendant announced a recall of one lot of Victor Super Premium Dog Food, Hi-Pro Plus produced at its Mount Pleasant, Texas production facility because it was potentially contaminated with Salmonella. According to Defendant, the affected product consisted of 644 cases sold in 5-pound bags with lot code 1000016385 with "Best By Date" April 30, 2024. On or around the next day, the Food and Drug Administration ("FDA") published news about Defendant's recall and reported that the recall was issued because a sample of Victor Super Premium Dog Food had tested positive for Salmonella in a random sample test conducted by the South Carolina Department of Agriculture.[1]

5. The next month, on October 30, 2023, Defendant announced that it was issuing a second recall covering three lots of Victor Super Premium Dog Food, Select Beef Meal & Brown Rice Formula produced at its Mount Pleasant, Texas production facility with "Best By Dates" of June 14, 2024.[2] According to the FDA announcement published that same day, the second recall was "initiated after a third-party conducted random sampling and product associated with three lots tested positive for Salmonella." According to Defendant, this second recall was "separate from and unrelated to the Mid America Pet Food recall for Salmonella on September 3, 2023."

6. Approximately a week later, on November 9, 2023, Defendant announced that it was expanding its October 30, 2023, recall to include Victor Super Premium Dog Foods, Wayne

---

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/mid-america-pet-food-issues-voluntary-recall-due-possible-salmonella-health-risk (last visited Nov. 21, 2023).
[2] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/mid-america-pet-food-issues-voluntary-recall-victor-beef-meal-rice-dog-food-due-possible-salmonella (last visited Nov. 21, 2023).

Feeds Dog Food, Eagle Mountain Pet Food, and some Member's Mark varieties with Best By Dates before October 31, 2024.[3] According to Defendant, the recall was expanded because additional product lots subject to random and targeted sampling had tested positive for Salmonella.

7.      That same day, the FDA announced that it, in collaboration with the U.S. Centers for Disease Control ("CDC") and state partners, was investigating seven human cases of Salmonella infection potentially associated with pet food made by Mid America.[4] Six of seven cases reported were in children one year of age or younger. Five of these cases reported exposure to dogs and three reported feeding Victor pet food to their pets. Illnesses started on dates ranging from January 14, 2023, to August 19, 2023. One person was hospitalized, and no deaths had been reported.

8.      All products included in Defendant's published September 3rd, October 30th, and November 9th recall announcements are hereinafter referred to as "Pet Food Products."[5]

9.      Defendant has marketed and advertised the Pet Food Products as being fit or suitable for animals, have represented that the Pet Food Products provide targeted nutrition, and/or have guaranteed the Pet Food Products for taste and nutrition. As alleged herein, Defendant's marketing and advertising of the Pet Food Products is false, deceptive, and misleading to reasonable consumers because the Pet Food Products were contaminated with Salmonella, and thus were not as advertised, represented, or guaranteed.

---

[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/mid-america-pet-food-expands-voluntary-recall-include-additional-dog-and-cat-food-products-due (last visited Nov. 21, 2023).

[4] https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-and-cdc-investigate-cases-salmonella-linked-pet-food-made-mid-america-pet-food-multiple-brands (last visited Nov. 21, 2023)

[5] A full list of the 34 Pet Food Products can be found at https://www.fda.gov/media/173750/download?attachment (last visited Nov. 21, 2023)

10.     Plaintiffs and Class members would not have purchased the Pet Food Products had they known the products contained, or might have contained, dangerous or toxic levels of Salmonella and/or that Defendant did not adequately test, screen, and/or inspect the Pet Food Products before selling them.

11.     Accordingly, Plaintiffs bring this action and assert claims on behalf of themselves and all other similarly situated persons (defined below) for negligence, negligent misrepresentation, breach of express and implied warranties, violation of relevant state consumer protections acts, and unjust enrichment.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million (exclusive of interests and costs), the number of members of the proposed Class exceeds 100, and many members of the proposed Class are citizens of different states than Defendant.

13.     This Court has personal jurisdiction over Defendant because Defendant is a citizen of Texas with its principal place of business in this district and regularly conducts business in this forum.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as this is the Judicial District in which Defendant resides and where a substantial part of the events or omissions giving rise to the claim occurred.

15.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

16.     Plaintiff Courtney Andersen is a citizen of Utah and resident of West Jordan, Utah.

17.     Plaintiff Lisa Burmeister is a citizen of Nevada and resident of Las Vegas, Nevada.

18.     Defendant Mid-America Pet Food, L.L.C. is a Limited Liability Company organized under the laws of Texas with its principal place of business located in Mt. Pleasant, Texas.

## FACTUAL ALLEGATIONS

### *Pet Foods with Salmonella are Dangerous to Pets and Humans*

19.     Salmonella is a group of bacteria that can cause foodborne illness or salmonellosis. Salmonella bacteria live in the intestinal tract of humans and animals and are transmitted through the fecal-oral route. Because pet foods contain animal products, contaminated ingredients can transfer to household pets through food.

20.     The FDA warns that pet foods contaminated with Salmonella "are of a particular public health importance because they affect both human and animal health."[6] Salmonella can sicken animals that eat contaminated food, potentially causing vomiting, diarrhea, bloody stools, fever, loss of appetite, and lethargy.

21.     Humans can become ill with Salmonella through contaminated pet food. If a human handles contaminated food and then touches their mouth, they can accidentally ingest the bacteria. Additionally, people with Salmonella on their bodies or clothes can then spread the bacteria to other people or surfaces. Symptoms include diarrhea, abdominal pain, fever, and vomiting. Symptoms can become severe when the infection spreads to the bloodstream and organs. The CDC estimates that Salmonella causes approximately 1.35 million illnesses, 26,500 hospitalizations, and

---

[6] https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-cautions-pet-owners-not-feed-performance-dog-raw-pet-food-due-salmonella-listeria-monocytogenes (last visited November 22, 2023)

420 deaths in the United States each year.[7]

22.     Due to this known risk and danger of Salmonella, manufacturers should have in place or implement quality and preventive control standards and practices to prevent sourcing of and use of ingredients with Salmonella in pet foods.

***Plaintiff Andersen's Experience with Pet Food Products***

23.     Between March 27, 2022 and October 16, 2023, Plaintiff Andersen made at least five purchases of Pet Food Products from Sam's Club: Member's Mark Salmon & Pea Recipe (one 30 lb. bag purchased on March 27, 2022); Member's Mark Chicken & Rice Recipe (one 35 lb. bag purchased on April 7, 2023); Member's Mark Lamb & Brown Rice Recipe (one 35 lb. bag purchased on April 27, 2023); Member's Mark Chicken & Brown Rice Recipe (two 40 lb. bags purchased on June 10, 2023); and  Member's Mark Chicken & Brown Rice Recipe (four 40 lb. bags purchased on October 16, 2023).

24.     In deciding to make her purchases of the Pet Food Products, Plaintiff Andersen relied on the representations on the Pet Food Products' packaging regarding the Pet Food Products' ingredients, benefits, and healthfulness:

---

[7] https://www.cdc.gov/salmonella/general/index.html (last visited November 22, 2023)







25.     Nowhere on the Pet Food Product packaging did Defendant disclose that the Pet Food Products contained or may contain Salmonella.

26.     Plaintiff Andersen fed the Pet Food Products to her dog, Spike.  Prior to consuming the Pet Food Product, Spike was a healthy dog.  After consuming the Pet Food Product, Spike began experiencing lethargy, vomiting, and vomiting of blood – symptoms consistent with Salmonella poisoning.

27.     On November 15, 2023, Plaintiff Andersen took Spike to her veterinarian, A. Scott McMullin, DVM at the VCA Jordan River Animal Hospital. At the advice of Dr. McMullin, Spike was euthanized. According to Dr. McMullin, Spike's symptoms were consistent with Salmonellosis.

***Plaintiff Burmeister's Experience with Pet Food Products***

28.     Between November 14, 2022, and October 6, 2023, Plaintiff Burmeister made at least nine purchases Pet Food Products from Amazon.com.  More specifically, Plaintiff Burmeister purchased 40 lb. bags of Victor Super Premium Dog Food – Select Beef Meal & Brown Rice

Formula on the following dates: November 14, 2022; December 18, 2022; January 29, 2023; March 12, 2023; May 1, 2023; June 12, 2023; July 24, 2023; September 4, 2023; and October 6, 2023. Plaintiff Burmeister has been purchasing Victor Super Premium Dog Food – Select Beef Meal & Brown Rice Formula via auto-delivery from Amazon.com for the last two years and for three years prior to that from other retailers.

29.    In deciding to make her purchases of the Pet Food Products, Plaintiff Burmeister relied on the representations on the Pet Food Products' packaging regarding the Pet Food Products' ingredients, benefits, and healthfulness:





**INGREDIENTS:** Beef Meal, Grain Sorghum, Whole Grain Brown Rice, Chicken Fat (preserved with mixed Tocopherols), Yeast Culture, Dehydrated Alfalfa Meal, Natural Flavor, Potassium Chloride, Carrot Powder, Tomato Pomace, Salt, Organic Dried Seaweed Meal, Taurine, Choline Chloride, Calcium Stearate, Zinc Methionine Complex, Vitamin E Supplement, DL-Methionine, Iron Amino Acid Complex, Hydrolyzed Yeast, Manganese Amino Acid Complex, Silicon Dioxide, L-Carnitine, Selenium Yeast, Brewers Dried Yeast, Dried Enterococcus Faecium Fermentation Product, Dried Lactobacillus Acidophilus Fermentation Product, Dried Aspergillus Oryzae Fermentation Extract, Dried Trichoderma Longibrachiatum Fermentation Extract, Dried Bacillus Subtilis Fermentation Extract, Copper Sulfate, Niacin Supplement, Vitamin B12 Supplement, Vitamin A Supplement, D-Calcium Pantothenate, Thiamine Mononitrate, Biotin, Yucca Schidigera Extract, Calcium Carbonate, Riboflavin Supplement, Calcium Iodate, Pyridoxine Hydrochloride, Vitamin D3 Supplement, Tetrasodium Pyrophosphate, Vegetable Oil, Rosemary Extract, Green Tea Extract, Spearmint Extract, Inulin, Lecithin, Folic Acid



GUARANTEED ANALYSIS

Crude Protein        Min. 24.0%
Crude Fat            Min. 12.0%
Crude Fiber          Max. 4.4%
Moisture             Max. 9.0%
Linoleic Acid (Omega 6)   Min. 2.0%
Linolenic Acid (Omega 3)  Min. 0.4%
Zinc                 Min. 150 mg/kg
Selenium             Min. 0.35 mg/kg
Vitamin E            Min. 150 IU/kg
L-Carnitine *        Min. 80 mg/kg

*Not recognized as an essential nutrient
by the AAFCO Dog Food Nutrient Profiles.

30.     Nowhere on the Pet Food Product packaging did Defendant disclose that the Pet Food Products contained or may contain Salmonella.

31.     Plaintiff Burmeister fed the Pet Food Products to her five-year-old mastiff, Rain Mae.  Prior to consuming the Pet Food Product, Rain Mae was a healthy dog.  In mid-October 2023, after consuming the Pet Food Product, Rain Mae began experiencing discomfort, breathing issues, diarrhea, shaky legs, lethargy, and weight loss.  Plaintiff Burmeister took Rain Mae to her veterinarian, who ordered lab work and ordered x-rays.  The lab results came back irregular and the veterinarian asked Plaintiff Burmeister if Rain Mae had possibly consumed something toxic.

32.     Because Rain Maie only eats Victor Super Premium Dog Food – Select Beef Meal & Brown Rice Formula (and had done so for the last five years) and because she had lost her appetite, Plaintiff Burmeister contacted Defendant via Defendant's website (www.victorpetfood.com) to notify Defendant that Rain Mae was no longer eating the Victor Super Premium Dog Food – Select Beef Meal & Brown Rice Formula – the food she had been eating for the last five years.   In response to her inquiry, Defendant called Plaintiff Burmeister and left a voicemail but did not provide any information about Salmonella or a recall or a potential recall.

33. Plaintiff Burmeister's husband and her daughter had to miss work taking care of Rain Mae, who eventually lost the ability walk, lost her appetite, and required four different veterinarian visits before she had to be euthanized because of the Salmonella present in the Pet Food Products she consumed. After Rain Mae passed away, Plaintiff Burmeister received a recall notice from Amazon.

34. Notably, both Plaintiff Burmeister and her son – the two people who fed Rain Mae -- became ill around the same time that Rain Mae became ill. Their symptoms included stomach pain and burning and loss of appetite. Although Plaintiff Burmeister's son's symptoms have subsided, Plaintiff Burmeister continues to experience them and has been referred to a gastroenterologist.

## CLASS ACTION ALLEGATIONS

35. Plaintiffs bring this action pursuant to Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure on behalf of the following proposed class: All persons residing in the United States who purchased one or more Pet Food Products subject to the September 3, October 30, or November 9, 2023, recalls ("Nationwide Class").[8]

36. Plaintiff Andersen also brings this action on behalf of herself and a state class defined as follows: All persons residing in Utah who purchased one or more Pet Food Product subject to the September 3, October 30, or November 9, 2023, recalls ("Utah State Class").[9]

37. Plaintiff Burmeister also brings this action on behalf of herself and a state class defined as follows: All persons residing in Nevada who purchased one or more Pet Food Product subject to the September 3, October 30, or November 9, 2023, recalls ("Nevada State Class").[10]

---

[8] Plaintiffs reserve the right to amend this Nationwide Class definition as this litigation progresses.
[9] Plaintiffs reserve the right to amend this Utah State Class definition as this litigation progresses.
[10] Plaintiffs reserve the right to amend this Nevada State Class definition as this litigation progresses.

38.     Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendant has a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

39.     This action is brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

## Numerosity of the Proposed Classes

## (Fed. R. Civ. P. 23(a)(1))

40.     The members of the Classes are so numerous that their individual joinder would be impracticable.  The Classes each comprise at least thousands of consumers.  The precise number of Class members, and their addresses, are unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records.  The members of the Classes may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary or appropriate by the Court) by published notice.

## Predominance of Common Questions of Fact and Law

## (Fed. R. Civ. P. 23(a)(2); 23(b)(3))

41.     Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting only individual members of the Classes.  The common legal and factual questions include, without limitation:

a.  Whether Defendant knew or should have known that the Pet Food Products were contaminated with Salmonella that rendered the Pet Food Products unsafe and unsuitable for consumption and human handling;

b.  Whether Defendant failed to employ quality control measures and failed to properly manufacture, test and/or inspect its Pet Food Products before distribution and sale;

c. The date on which Defendant learned or should have learned of Salmonella contamination in its Pet Food Products;

d. Whether Defendant made affirmative misrepresentations and/or false and misleading statements regarding the Pet Food Products;

e. Whether Defendant failed to disclose material facts regarding the Pet Food Products;

f. Whether Defendant was negligent in producing the Pet Food Products;

g. Whether Defendant made negligent misrepresentations in connection with the distribution and sale of the Pet Food Products;

h. Whether Defendant breached express warranties in connection with the distribution and sale of the Pet Food Products;

i. Whether Defendant breached the implied warranty of merchantability in connection with the distribution and sale of the Pet Food Products;

j. Whether Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* in connection with the distribution and sale of the Pet Food Products;

k. Whether Defendant violated the state consumer protection statutes alleged herein;

l. Whether Defendant was unjustly enriched;

m. The nature of the relief, including damages and equitable relief, to which Plaintiff and the members of the Classes are entitled; and

n. Whether Defendant is liable for attorneys' fees and costs.

**Typicality of Claims**

**(Fed. R. Civ. P. 23(a)(3))**

42. Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs, like all

other Class members, purchased Defendant's Pet Food Products, suffered damages as a result of those purchases, and seeks the same relief as the proposed Class members.

## Adequacy of Representation

## (Fed. R. Civ. P. 23(a)(4))

43.     Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the members of the Classes and have retained counsel competent and experienced in complex class action, including consumer litigation and pet food contamination litigation.

44.     Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Classes.

## Superiority of a Class Action

## (Fed. R. Civ. P. 23(b)(3))

45.     A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and members of the Classes.  There is no special interest in Class members individually controlling the prosecution of separate actions.  The damages suffered by individual members of the Classes, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  Further, it would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them.  And, even if members of the Classes themselves could afford such individual litigation; the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments.  Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved.  By contrast, the

class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief

### (Fed. R. Civ. P. 23(b)(1) and (2))

46. In the alternative, this action may properly be maintained as a class action, because:

   a. the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

   b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

   c. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

### Issue Certification

### (Fed. R. Civ. P. 23(c)(4))

47. In the alternative, the common questions of fact and law, set forth in Paragraph 41, are appropriate for issue certification on behalf of the proposed Classes.

### FIRST CAUSE OF ACTION

## Negligence

## (On Behalf of All Classes)

48.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

49.     Defendant owed a duty of care to Plaintiffs and the Class members. Defendant breached that duty.

50.     Defendant is the manufacturer of the Pet Food Products purchased by Plaintiffs and Class members.

51.     Defendant had a duty to take reasonable care in the manufacture, formulation, sourcing, testing, inspection, marketing, distribution, and the sale of its Pet Food Products, including identifying all affected Pet Food Products and/or to promptly recall and remove all of the affected Pet Food Products from the marketplace, including taking all appropriate remedial action.

52.     By the actions and omissions alleged herein, Defendant breached its duty. Among other things, Defendant manufactured products contaminated with Salmonella that rendered its Pet Food Products unsafe and unsuitable for consumption and human handling.

53.     As a result of Defendant's breaches and violations, Plaintiffs and Class members suffered harm.

54.     Defendant's negligence was a substantial factor in the harm caused to Plaintiffs and Class members.

55.     At all relevant times, Plaintiffs and members of the Classes acted lawfully and with due care and did not contribute to the injuries suffered by its pets.

56.     Accordingly, Plaintiffs and members of the Classes are entitled to damages and

other appropriate relief, as prayed for hereunder.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

### (On Behalf of All Classes)

57.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restates them as if fully set forth herein.

58.     Defendant's actions and omissions alleged herein constitute negligent misrepresentation.

59.     Defendant misrepresented material facts concerning the safety, suitability, and quality of its Pet Food Products, including that the Pet Food Products were nutritious, healthful, and suitable for pets.

60.     Defendant has no reasonable grounds for believing that its misrepresentations were true.  Among other things, Defendant represented that the Pet Food Products were of high quality, healthy, safe, and suitable for pet consumption. Defendant knew or should have known but failed to disclose that, contrary to its representations, the Pet Food Products were contaminated with Salmonella that could cause injury to pets and humans, such as vomiting, diarrhea, fever, loss of appetite, lethargy, or can lead to serious health issues including death.

61.     Defendant made such misrepresentations with the intent to induce Plaintiffs and Class members to rely on its misrepresentations and purchase Pet Food Products containing dangerous levels of Salmonella.

62.     Plaintiffs and Class members had no knowledge of the falsity of Defendant's representations and reasonably believed them to be true. In justified reliance on Defendant's misrepresentations, Plaintiffs and Class members purchased and fed their pets the Pet Food

18

Products containing dangerous levels of Salmonella.

63. As a direct and proximate consequence, Plaintiffs and Class members suffered harm. Among other things, they would not have purchased Defendant's Pet Food Products, or would have paid less had they known of the presence, or the potential presence, of dangerous levels of salmonella.

64. Plaintiffs and Class members are therefore entitled to damages and relief, as prayed for hereunder.

### THIRD CAUSE OF ACTION

### Breach of Express Warranty

### (On Behalf of All Classes)

65. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

66. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for breach of express warranty.

67. Defendant marketed and sold the Pet Food Products into the stream of commerce with the intent that the Pet Food Products would be purchased by Plaintiffs and members of the Classes.

68. Defendant expressly warranted, advertised, and represented to Plaintiffs and members of the Classes that the Pet Food Products were and are high quality, healthy, safe, and suitable for pet consumption.

69. Defendants made these express warranties regarding the Pet Food Products' quality, ingredients, and suitability for pet consumption in writing through its website, advertisements, and marketing materials and on the Pet Food Products' packaging and labels. These express warranties

became part of the basis of the bargain that Plaintiffs and members of the Classes entered into upon purchasing the Pet Food Products.

70.     Defendant's warranties, advertisements, and representations were made in connection with the sale of the Pet Food Products to Plaintiff and members of the Classes. Plaintiffs and members of the Classes relied on Defendant's warranties, advertisements, and representations regarding the Pet Food Products in deciding whether or not to purchase Defendant's Pet Food Products.

71.     Defendant's Pet Food Products do not conform to Defendant's warranties, advertisements, and representations in that they are not safe or appropriate for pet consumption, as they are contaminated with Salmonella.

72.     Defendant was on notice of this breach, as Defendant was aware of the dangerous Salmonella contamination in the Pet Food Products due to its own testing and expertise, and/or based on testing conducting by various third parties as alleged herein that revealed the Pet Food Products as contaminated with Salmonella.

73.     Defendant also received notice concerning Defendant's wrongful conduct as alleged herein via Plaintiff Burmeister's telephone call.

74.     Affording Defendant a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant had known of and concealed the safety of its Pet Food Products.

75.     Privity exists because Defendant expressly warranted to Plaintiffs and members of the Classes through the warranting, website, packaging, advertising, marketing, and labeling that the Pet Food Products were high quality, healthy, safe, and suitable for pet consumption, and by failing to make any mention of dangerous levels of Salmonella contamination.

76.     As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Classes have suffered actual damages in that they purchased Pet Food Products that were worth less than the price they paid and they would not have purchased had they known of the risk and/or presence of dangerous levels of Salmonella contamination that do not conform to the Pet Food Products' marketing and advertisements.

77.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FOURTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

### (On Behalf of All Classes)

78.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

79.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

80.     At all relevant times, Defendant was the merchant, manufacturer, marketer, warrantor, and/or seller of the Pet Food Products. Defendant knew or had reason to know of the specific use for which the Pet Food Products were purchased.

81.     Plaintiffs purchased the Pet Food Products manufactured and marketed by Defendant at retailers and online retailers for retail sale to consumers throughout the United States.

82.     Pet Food Products are and were at all relevant times goods within the meaning of various state statutes set forth herein.

83.     An implied warranty that the Pet Food Products were merchantable arose by

operation of law as part of the sale of the Pet Food Products.

84.     Defendant impliedly warranted to Plaintiffs and the Classes that the Pet Food Products were of merchantable quality, fit for their ordinary use, and conformed to the messaging, characterizations, promises, and affirmations of fact made on the Pet Food Products' packaging, labels and/or advertisements, including that the food was high quality, healthy, safe, and suitable for pet consumption. The Pet Food Products when sold at all times were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and nutritious food for pets. The Pet Food Products were and are not safe for pets because they contain dangerous levels of Salmonella.

85.     Plaintiffs and members of the Classes relied on such messaging, characterizations, promises, and affirmations of fact when they purchased the Pet Food Products. Contrary to Defendant's representations and warranties, the Pet Food Products were not fit for their ordinary use, consumption by pets, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, dangerous levels of Salmonella contamination that do not conform to the packaging.

86.     As a consequence, Defendant breached its implied warranties upon selling such Pet Food Products, as each product contaminated with Salmonella.

87.     Defendant cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Pet Food Products.

88.     Defendant was on notice of this breach, as Defendant was aware of the Salmonella contamination in the Pet Food Products due to its own testing and expertise, and/or based on testing conducting by various third parties as alleged herein that revealed the Pet Food Products as contaminated with Salmonella.

89.     Defendant also received notice concerning Defendant's wrongful conduct as alleged herein via Plaintiff Burmeister's telephone call.

90.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and members of the Classes have been damaged in an amount to be proven at trial.

91.     Plaintiffs and members of the Classes have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

92.     Privity exists because Defendant impliedly warranted to Plaintiff and members of the Classes through the warranting, website, packaging, advertising, marketing, and labeling that the Pet Food Products were high quality, healthy, safe, and suitable for pet consumption, and by failing to make any mention of Salmonella contamination.

93.     Nonetheless, privity is not required here because Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendant and its distributors and buyers, and of their implied warranties. The distributors and buyers were not intended to be the ultimate consumers of the Pet Food Products and have no rights under the warranties of the Pet Food Products; the warranties were designed for and intended to benefit consumers only.

94.     As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they have purchased Pet Food Products that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of Salmonella contamination.

95.     Plaintiffs and members of the Classes seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FIFTH CAUSE OF ACTION

## Fraudulent Concealment - Fraud by Omission

## (On Behalf of All Classes)

96.     Plaintiffs hereby incorporates all other paragraphs of this Complaint and restate them as if fully set forth herein.

97.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for fraud by omission.

98.     Defendant concealed from and failed to disclose to Plaintiffs and members of the Classes that the Pet Food Products were contaminated with Salmonella and do not conform to the Pet Food Products' labels, packaging, advertising, and statements, including, but not limited to, representations that they were high quality, healthy, safe, and suitable for pet consumption.

99.     Defendant was under a duty to disclose to Plaintiffs and members of the Classes the true quality, characteristics, ingredients and suitability of the Pet Food Products because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Products for consumption by pets; (3) Defendant had exclusive knowledge of its own test results showing dangerous levels of Salmonella contamination in its Pet Food Products; and/or (4) Defendant knew that Plaintiffs and members of the Classes could not reasonably have been expected to learn or discover that the Pet Food Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Pet Food Products.

100.    The facts concealed or not disclosed by Defendant to Plaintiffs and members of the Classes are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Pet Food Products. No reasonable consumer would have

purchased the Pet Food Products had Defendant adequately and fully disclosed the truth.

101.    Defendant knew that this omission was material information that Plaintiffs and members of the Classes required, and Defendant intentionally omitted and failed to disclose this information to induce the Plaintiffs and members of the Classes to purchase its Pet Food Products.

102.    Plaintiffs and members of the Classes did not know or suspect that Defendant's Pet Food Products were unsafe or contained unhealthy ingredients.

103.    Plaintiffs and members of the Classes justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Pet Food Products, which are inferior when compared to how the Products are advertised and represented by Defendant.

104.    As a direct and proximate result of Defendant's conduct, Plaintiffs and members of the Classes have suffered actual damages in that they purchased the Pet Food Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of dangerous levels of Salmonella contamination that do not conform to the products' labels, packaging, advertising, and statements.

105.    Plaintiffs and members of the Classes seek actual and punitive damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of All Classes)

106.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

107. Plaintiffs and members of the Classes conferred a benefit upon Defendant. Plaintiffs and members of the Classes paid money for Defendant's Pet Food Products that were not as represented; they were not suitable for pets, they did not provide targeted nutrition for pets, and/or they did not meet Defendant's guarantees promising taste and nutrition. Defendants have unjustly retained the benefits conferred upon them by Plaintiffs and Class members.

108. Defendant retained that benefit under circumstances that make it inequitable for it to retain such benefit. Specifically, Defendant retained that benefit even though its Pet Food Products contain or may contain Salmonella that renders the Pet Food Products unsafe and unsuitable for pet consumption and human handling. If Plaintiffs and Class members had known the true nature of the Pet Food Products, they would not have paid money for them or would have paid less.

109. Plaintiffs and Nationwide Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

## SEVENTH CAUSE OF ACTION

**Violation of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1 et seq.**

**(On Behalf of the Utah State Class)**

110. Plaintiff Andersen ("Plaintiff" for purposes of this Count) incorporates by reference each and every allegation set forth above as if fully written herein.

111. Plaintiff brings this claim on behalf of the Utah State Class (the "Class" for purposes of this Count).

112. Defendant qualifies as a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code Ann. § 13-11-3.

113. Plaintiff and the Class Members are "persons" under Utah Code Ann. § 13-11-3.

114.    Sales of the Pet Food Products to Plaintiff and the Class were "consumer transactions" within the meaning of Utah Code Ann. § 13-11-3.

115.    The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under Utah Code Ann. § 13-11-4. Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or (b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Utah Code Ann. § 13-11-4.

116.    "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code Ann. § 13-11-5.

117.    In the course of its business, Defendant made affirmative misrepresentations regarding the Pet Food Products that were deceptive and/or unconscionable. Specifically, Defendant represented that the Pet Food Products were suitable for animals and provided targeted nutrition. Defendant, however, failed to disclose material facts, namely, that (1) the Pet Food Products contained, or might contain, Salmonella resulting in injury to pets and humans; and (2) Defendant failed to properly source, inspect, manufacture, and test Pet Food Products and ingredients for contaminants. Defendant had a duty to disclose these material facts because the Pet Food Products were unsafe and because Defendant made affirmative representations about the Pet Food Products. If Plaintiff had known that the Pet Food Products contained Salmonella contaminants, or that Defendant failed to inspect and test the Pet Food Products and ingredients for contaminants adequately, Plaintiff would not have purchased the Pet Food Products.

118.    Plaintiff and Class members had no way of discerning that Defendant's

representations were false and misleading because Plaintiff and Class members did not have access to Defendant's internal testing, internal testing equipment, internal policies or procedures, or any internal documents regarding Salmonella contaminants.

119. Defendant thus violated the Utah CSPA by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Pet Food Products were safe and suitable for animals. Defendant also failed to disclose and warn that the Pet Food Products were unsafe and unsuitable for animals; that the Pet Food Products contained, or might contain, Salmonella resulting in injury to pets and humans; and that Defendant failed to properly inspect and test the Pet Food Products for toxins and contaminants.

120. Defendant intentionally and knowingly misrepresented material facts regarding the Pet Food Products with intent to mislead Plaintiff and the Class.

121. Defendant knew or should have known that its conduct violated the Utah CSPA.

122. Defendant owed Plaintiff and the Class a duty to disclose the true and unsafe nature of the Pet Food Products.

123. Defendant's concealment of the true characteristics of the Pet Food Products was material to Plaintiff and the Class.

124. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true nature of the Pet Food Products.

125. Defendant's violations present a continuing risk to Plaintiff, the Class, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

126. Plaintiff and the Class suffered ascertainable loss and actual damages as a direct

and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.

127. As a direct and proximate result of Defendant's violations of the Utah CSPA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

128. Pursuant to Utah Code Ann. § 13-11-4, Plaintiff and Class Members seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for Plaintiff and each Class Member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

129. Plaintiff and the Class also seek an order enjoining Defendant's' unfair, unlawful, and/or deceptive practices, punitive damages, and attorneys' fees, and any other just and proper relief available.

## EIGHTH CAUSE OF ACTION

**Violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, et seq.**

**(On Behalf of Nevada State Class)**

130. Plaintiff Burmeister ("Plaintiff" for purposes of this Count) incorporates by reference each and every allegation set forth above as if fully written herein.

131. Plaintiff brings this claim on behalf of the Nevada State Class (the "Class" for purposes of this Count).

132. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, *et. seq*. prohibits the use of deceptive trade practices in the course of business and occupation.

133. In the course of its business, Defendant made affirmative misrepresentations

regarding the Pet Food Products that were deceptive and/or unconscionable. Specifically, Defendant represented that the Pet Food Products were suitable for animals and provided targeted nutrition. Defendant, however, failed to disclose material facts, namely, that (1) the Pet Food Products contained, or might contain, Salmonella resulting in injury to pets and humans; and (2) Defendant failed to properly inspect and test Pet Food Products and ingredients for contaminants. Defendant had a duty to disclose these material facts because the Pet Food Products were unsafe and because Defendant made affirmative representations about the Pet Food Products. If Plaintiff had known that the Pet Food Products contained Salmonella contaminants, or that Defendant failed to inspect and test the Pet Food Products and ingredients for contaminants adequately, Plaintiff would not have purchased the Pet Food Products.

134. By misrepresenting the Pet Food Products as safe and/or suitable to be fed to pets, and by failing to disclose and actively concealing the dangers and risk of salmonella poisoning, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Nev. Rev. Stat. §§ 598.0915, 598.0923, and 598.0925:

    a. Representing that the Pet Food Products have certifications which they do not have;

    b. Representing that the Pet Food Products have characteristics, uses, benefits, and qualities which they do not have;

    c. Representing that the Pet Food Products are of a particular standard, quality, and grade when they are not;

    d. Failing to disclose the salmonella contamination in connection with the sale of the Pet Food Products; and

    e. Making an assertion of scientific fact in an advertisement which would cause a reasonable person to believe that the assertion is true.

Nev. Rev. Stat. §§ 598.0915(5), (7), (9), (15), 598.0923(2), and 598.0925

135.    Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and Class members did not have access to Defendant's internal testing, internal testing equipment, internal policies or procedures, or any internal documents regarding Salmonella contaminants.

136.    Defendant thus violated the Nevada DTPA by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Pet Food Products were safe and suitable for animals. Defendant also failed to disclose and warn that the Pet Food Products were unsafe and unsuitable for animals; that the Pet Food Products contained, or might contain, Salmonella resulting in injury to pets and humans; and that Defendant failed to properly inspect and test the Pet Food Products for toxins and contaminants.

137.    Defendant intentionally and knowingly misrepresented material facts regarding the Pet Food Products with intent to mislead Plaintiff and the Class.

138.    Defendant knew or should have known that its conduct violated the Nevada DTPA.

139.    Defendant owed Plaintiff and the Class a duty to disclose the true and unsafe nature of the Pet Food Products.

140.    Defendant's concealment of the true characteristics of the Pet Food Products was material to Plaintiff and the Class.

141.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true nature of the Pet Food Products.

142.    Defendant's violations present a continuing risk to Plaintiff, the Class, and the general public. Defendant's unlawful acts and practices complained of herein affect the public

interest.

143.     Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.

144.     As a direct and proximate result of Defendant's violations of the Nevada DTPA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

145.     Pursuant to Nev. Rev. Stat. §§ 41.600, Plaintiff and Class Members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Nevada DTPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendants as follows:

A.     Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as a representative of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B.     Awarding Plaintiffs and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

C.     Awarding Plaintiffs and the Classes appropriate relief, including actual damages;

D.     For declaratory and equitable relief, including restitution and disgorgement;

E.     For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

F.     Awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

G.      Awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

H.      Awarding pre-judgment and post-judgment interest; and

I.      Granting any other relief as this Court may deem just and proper.


## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: November 28, 2023

*/s/Greg Love*
Greg Love
**STECKLER WAYNE & LOVE**
107 E Main Street
Henderson, Texas 75652
Tel: (903) 212-4444
greg@swclaw.com

Jeffrey S. Goldenberg (*Pro hac application forthcoming*)
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel: 513-345-8297
Fax: 513-345-8294
jgoldenberg@gs-legal.com


Charles E. Schaffer
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
Fax: 215-592-4663
cschaffer@lfsblaw.com

*Attorneys for Plaintiffs and Classes*